483 A.2d 979

**Spero T. LAPPAS, Appellant,**

**v.**

**Swanson BROWN.**

Superior Court of Pennsylvania.

Submitted June 22, 1984.

Filed Nov. 2, 1984.

Spero T. Lappas, Harrisburg, appellant, in propria persona.

Swanson Brown, appellee, in propria persona.

Before DEL SOLE, POPOVICH and ROBERTS, JJ.

POPOVICH, Judge:

This is an appeal by Spero T. Lappas, appellant, from an order of the Court of Common Pleas of Dauphin County which granted a stay in execution and ordered forfeiture of a fund in the amount of $1,450.00. This appeal arises out of the following factual context.

■■ Swanson Brown, appellee, was arrested on February 13, 1982, and charged with possession of marijuana and possession with intent to deliver. A search of his residence pursuant to a search warrant resulted in seizure of quantities of marijuana and cash in the amount of $1,450.00. The money was held by the Dauphin County District Attorney and the Dauphin County Detective's Office pending resolution of the criminal charges against Brown. On May 11, 1982, Brown entered a plea of guilty to possession with intent to deliver and was sentenced on January 26, 1983, to pay a fine of $1,000 and to imprisonment for a period of one to two years. On September 8, 1982, appellant confessed judgment on a note against Brown in the amount of $1,138.50, seeking satisfaction of fees for legal services rendered.[1] On January 25, 1983, he filed a praecipe for writs of execution upon Brown; Richard Lewis, the District Attorney; Kenneth Barbush, the County Detective; John Goshert,[2] the seizing officer; and the Harrisburg Police Department.

---

**1.** Although neither side has raised the ethical considerations hereafter discussed, our review would be inadequate were we to ignore the obvious improprieties involved herein, which tend to "leap out from the record". If the record presents a substantial question whether counsel has properly discharged his professional responsibilities, a court cannot ignore such question. *Polascik v. Baldwin*, 245 Pa.Super. 1, 369 A.2d 263 (1976).

Appellant sues his client while at the same time asserting his client's rights to the fund. We would stress that an attorney should avoid even the appearance of professional impropriety and our present disposition of the merits of the appeal in no way condones the practices employed by appellant.

Disciplinary Rule 5–101 Refusing Employment

When the Interests of the Lawyer May Impair His Independent Professional Judgment

(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

Ethical Canon 2–23. A lawyer should be zealous in his efforts to avoid controversies over fees with clients and should attempt to resolve amicably any differences on the subject. He should not sue a client for a fee unless necessary to prevent fraud or gross imposition by the client.

**2.** John Goshert joined in the brief filed by D.A. Richard A. Lewis by letter dated May 1, 1984.

On February 7, 1983, one year after Brown's arrest and 12 days after sentencing, the Commonwealth filed a Petition in Forfeiture captioned *Commonwealth v. 1450 Dollars U.S. Currency,* alleging that the funds were "derivative contraband" and thus subject to forfeiture, and the garnishees immediately filed an application for Stay of Execution. A Rule was issued upon appellant to show cause why the execution should not be stayed "pending the outcome of the appeal period in Commonwealth v. Swanson Brown ... and/or Commonwealth's Petition in Forfeiture in that case, which ever shall last occur." Appellant answered the Rule, and a hearing was conducted on April 6, 1983, on the forfeiture petition. The lower court held that the fund was not subject to garnishment by appellant and granted the stay. The court ordered the fund forfeited. This appeal followed, and we affirm.

Appellant raises two issues for our review.[3] First, he claims that the Petition in Forfeiture filed by the Commonwealth was not filed "forthwith" as is required under 35 Pa.C.S.A. 780–128(b), (c).[4] 35 Pa.C.S.A. 780–128 reads, in pertinent part, as follows:

(b) Property subject to forfeiture under this act may be seized by the law enforcement authority upon process issued by any court of common pleas having jurisdiction over the property. Seizure without process may be made if:

(1) The seizure is incident to an arrest or a search under a search warrant or inspection under an administrative inspection warrant;

\* \* \* \* \* \*

3. Appellant discusses three issues, but only two are included in his statement of questions involved. *See* Pa.R.A.P. 2116.

4. Even if the petition in forfeiture was not timely filed and Brown had a possessory right to the fund at the time judgment was entered by appellant,

Money which is held by the Commonwealth as the result of seizure pursuant to a search warrant, or in connection with an arrest, is property which is subject to the order of court and is clearly *in custodia legis* and not subject to attachment or garnishment.

*Commonwealth v. Myers,* 298 Pa.Super. 272, 282, 444 A.2d 1170, 1175 (1982).

(c) In the event seizure without process occurs, as provided herein, *proceedings for the issuance thereof shall be instituted forthwith.* (Emphasis added)

1972, April 14, P.L. 233, No. 64, § 28, eff. June 14, 1972. This court has recently noted that 35 Pa.C.S.A. 780–128 is not the proper act under "which forfeiture [of monies] is sought."

That statute is most specific in enumerating the property which is subject to forfeiture, and nowhere does the act provide in any way for the forfeiture of money ....

*Commonwealth v. Myers,* 298 Pa.Super. 272, 279 n. 2, 444 A.2d 1170, 1174 n. 2 (1982). However, the court in *Commonwealth v. Landy,* 240 Pa.Super. 458, 362 A.2d 999 (1976) stated:

Section 780–128 of the Drug, Device and Controlled Substance Act defines what property is "subject to forfeiture to the Commonwealth" as contraband. Among the items listed in § 780–128 are all controlled substances, all raw materials used in manufacturing controlled substances, all property used as a container for controlled substances, all vehicles which transport controlled substances, and all books and records pertaining to controlled substances. Section 720–128, however, does not specifically authorize the forfeiture of money received in exchange for the illegal delivery of controlled substances. *We do not regard this omission as evidencing a legislative intent to immunize from forfeiture the proceeds of the sale of a controlled substance.* Rather, the statutory scheme envisions the confiscation of the proceeds by the imposition of a fine following conviction: § 780–113(f)(1) provides that upon conviction of violating § 780–113(a)(30) (possession with intent to deliver), the defendant "shall be sentenced to imprisonment not exceeding fifteen years, or to pay a fine not exceeding two hundred fifty thousand dollars ($250,000), or both or such larger amount as is sufficient to exhaust assets utilized in *and the profits obtained from the illegal activity."* Any argument that the legislature intended a fine following conviction to be

the sole means of depriving a seller of the fruits of his criminal act, however, must be rejected: § 780–113(h) provides that "[a]ny penalty imposed for violation of this act shall be in addition to, and not in lieu of, any civil or administrative penalty or sanction authorized by law. *Id.*, 240 Pa.Superior Ct. at 464, 362 A.2d at 1002 (Emphasis added). "The object of § 780–128 is to impose a penalty on those who are significantly involved in criminal enterprises in violation of the Drug Law." *Commonwealth v. 1978 Toyota*, 321 Pa.Super. 549, 552, 468 A.2d 1125, 1126 (1983).

█ Accordingly, even though this cause of action does not fit strictly within the rubric of § 780–128 since it concerns currency, we can analogize to that act. We note that a delay of one year before the filing of a petition appears to have been violative of the "forthwith" provision. We are mindful, however, that this is an action between Brown's creditor and those whom he is attempting to garnish. Although we do not wish to encourage the late filing of Petitions in Forfeiture, under the facts of this case, we find no prejudice claimed or apparently suffered by Brown or appellant. (*See One 1965 Buick 4-Door Sedan v. Commonwealth*, 46 Pa.Cmwlth. 189, 408 A.2d 157 (1979) which introduced the concept of prejudice into the analysis of whether a delay of three years before commencement of a forfeiture hearing violated the owner's right to a hearing within a reasonable time). With respect to Brown, although he had a right to, he apparently did not file a motion for the return of his property under Pa.R.Crim.P. 324.[5] With respect to appellant, no claim of prejudice appears nor does it seem likely that there has been any prejudice to his rights.

5. **Rule 324. Motion for Return of Property**
 (a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.
 (b) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. *If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.*

Although it is true that the Commonwealth waited for one year after the funds were taken into custody before it filed a Petition, the fund would certainly have been held *in custodia legis* for use as evidence or for disposition in satisfaction of the fines and costs imposed upon Brown at sentencing and would, therefore, not have been available to Brown or appellant in any event. (*See infra* footnote 4).

Moreover, the hearing on the Petition was properly held *after* resolution of the charges against Brown. *Commonwealth v. One (1) 1971 Ford LTD*, 245 Pa.Super. 303, 369 A.2d 414 (1976). Brown pled guilty to the charge brought against him, and this plea could easily have been withdrawn before sentencing. We note that the Commonwealth's Petition was filed less than two weeks after sentencing. Since we find no prejudice to appellant nor Brown, we will entertain on appeal the court's distribution of the fund.[6]

We agree with the lower court's implicit characterization of the funds as "derivative contraband". The Commonwealth had the burden of proving that the money was derived from the illegal sale of marijuana by a "preponderance of the evidence." *Commonwealth v. Coghe*, 294 Pa. Super. 207, 439 A.2d 823 (1982); *Commonwealth v. Landy, supra.*

> Money proceeds directly derived from and directly traceable to the sale of a controlled substance (contraband per se), a criminal act, are "derivative contraband" subject to forfeiture. Such money represents the fruit of the illegal act and it, therefore, takes on the illegal characteristics of the contraband controlled substance. It is not only the policy of the Controlled Substance, Drug, Device and Cosmetic Act, but also the policy of our criminal law to deprive a criminal of the fruits of his illegal act.

*Commonwealth v. Landy*, 240 Pa.Superior Ct. 465, 362 A.2d at 1002.

---

6. We note that a claim that the forfeiture is in derogation of Brown's rights is not strictly at issue since this case involves Brown and appellant in a procedurally adversarial stance; however, since the lower court ordered forfeiture and the issue is timeliness of the Petition, Brown's rights are affected thereby.

■ The Commonwealth sustained its burden of proof. Naturally, in order to show a nexus between the funds and the contraband, it was necessary to show that, although Brown was not arrested for the sale of drugs, he was nonetheless involved in sales. A police officer testified that an informant told him that Brown was selling marijuana. (T-12).[7] A man sitting in the living room of Brown's residence at the time of the execution of the warrant had one-quarter pound of marijuana on the floor beside him. A police officer testified that its worth would be approximately $125 which exact sum was found in Brown's pocket. (T-16). There was evidence of a purported admission by Brown that he had sold ten pounds of marijuana (T-21) and that he procured drugs in 25-pound lots from "a white guy across the river." (T-28). He was in the company of a suspected drug dealer (T-33). Most convincing, however, was the admission of his bank statements which tended to refute his statement that he received no other income than his employment wages. (T-41). The statements showed deposits in excess of that amount which would represent his wages. (T-42, 43).

In *Commonwealth v. Myers*, this court reversed a lower court order characterizing money as derivative contraband; however,

> the trial record and the jury verdict related solely to *possession* by the [accused] of marijuana with the intention of delivering it. *No evidence was presented of any sale of marijuana* or of anything else, and no attempt was made by the Commonwealth to show any specific transaction. (Emphasis added)

*Id.*, 298 Pa.Superior Ct. at 280, 444 A.2d at 1175.

Here, the Commonwealth not only showed that Brown's acts were preliminaries to prospective sales but attempted to show that he had been involved in past sales.

■ Where money is characterized as derivative contraband, then that was its character on the date of its seizure.

7. "T" will denote the Notes of Testimony from the Forfeiture Hearing.

The determination by the Court must attach *nunc pro tunc* to the date of the seizure. "Contraband, by its very term, is not that to which possession may attach, contraband being that which it is illegal to possess. Thus, if the Court's determination was correct, [Brown] had no possessory right to the money at any time after [it was seized].

*Id.*, 298 Pa.Superior Ct. at 279–280, 444 A.2d at 1174.

 The possessory rights of appellant can rise no higher than those of Brown and since an attachment fails if the garnishee has in his possession no money or property belonging to the debtor,[8] we affirm the lower court order granting the stay and mandating forfeiture.

Order affirmed.

DEL SOLE, J., files a concurring opinion.

DEL SOLE, Judge, concurring:

While I concur in the result reached by the majority in this matter, I write to explain my view that we should not even reach the issue of whether the fund was derivative contraband.

The record reflects that on September 8, 1982, the Appellant secured a judgment against Swanson Brown by virtue of a note which was filed in the prothonotary's office in Dauphin County. This matter was assigned No. 2916 N. 1982. On January 25, 1983, a writ of execution was issued on the judgment naming as garnishees, Richard A. Lewis the District Attorney of Dauphin County, Kenneth Barbish a County Detective, the Harrisburg Police Department and Detective John Goshert of that department. Between January 28, 1983 and February 1, 1983, the Sheriff served the writ on the garnishees so named. The item sought to be garnished was the sum of money, which was described as "1,450 more or less".

8. *Folmar v. Shaffer,* 232 Pa.Super. 22, 24–25, 332 A.2d 821, 823 (1974).

On February 7, 1983, the garnishee petitioned the court for a stay of execution and filed preliminary objections. A rule was granted on the Appellant to show cause why the execution should not be stayed pending the outcome of the underlying criminal action or determination on a contemporaneously filed petition in forfeiture. The rule was returnable in 20 days.

The Commonwealth filed a petition in forfeiture, *Commonwealth v. One Thousand Four Hundred Fifty Dollars U.S. Currency*, at No. 38 MD 1983 in the Court of Common Pleas of Dauphin County, Pennsylvania and sought forfeiture of the fund held by the District Attorney as derivative contraband. Said sum of money having been confiscated by the authorities at the time of the arrest of Swanson Brown on drug charges.

Subsequently, a hearing was held in the forfeiture proceeding and the court determined that the money was derivative contraband and ordered a forfeiture. The court stayed the execution as to the garnishees in the case at 2916 N. 1982. It is from the order in the case at 2916 N. 1982 that the Appellant appeals.

Forfeiture in this case was ordered in the forfeiture proceeding, *Commonwealth v. One Thousand Four Hundred U.S. Currency*, at No. 38 MD 1983 in which the Appellant did not petition to intervene nor from which did Appellant take an appeal. Therefore, no appeal having been filed from the case wherein the court declared a forfeiture, I would not reach the issue. While there is no question that the Appellant would have had standing to pursue the claim in the forfeiture action, had he petitioned to intervene in that action, Appellant did not do so.

The Appellant cannot collaterally attack a determination by the trial court made in another proceeding which has litigated title to the fund. The mere fact that the writ of execution garnishing the fund was filed before the petition for forfeiture does not automatically give Appellant standing in the forfeiture action.