529 A.2d 1104

**Laura L. SUGALSKI, Charles E. Roop, Sr., Charles E. Roop, Jr.,**

v.

**Jay COCHRAN, Jr., Commissioner, Pennsylvania State Police, Appellant.**

Superior Court of Pennsylvania.

Argued April 30, 1987.

Filed Aug. 10, 1987.

Richard W. Sponseller, Deputy Attorney General, Harrisburg, for appellant.

Roger B. Reynolds, Norristown, for Sugalski, appellee.

Allan J. Josel, Assistant Public Defender, Norristown, for Roop, Sr., appellee.

Before OLSZEWSKI, DEL SOLE and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the lower court's order granting appellee's petition for return of property. Appellant contends that the lower court erred because the evidence was sufficient to establish that the seized property was derivative contraband and, thus, unlawfully possessed by appellee. After a careful review of the record, the briefs submitted by the parties and the lower court's opinion, we find that the appellant did not meet its burden of proof in this matter, *Petition of Maglisco*, 341 Pa.Superior Ct. 525, 531, 491 A.2d 1381, 1384 (1985), and affirm on the lower court's opinion.

Affirmed. Jurisdiction is relinquished.

OLSZEWSKI, J., files a dissenting opinion.

APPENDIX

LAURA SUGALSKI; CHARLES E. ROOP, SR.;
CHARLES E. ROOP, JR.

vs.

JAY COCHRAN, JR.

MISC. NOS. 337 July 1985, 338 July 1985,
339 July 1985.

IN THE COURT OF COMMON PLEAS OF
MONTGOMERY COUNTY,
PENNSYLVANIA

CRIMINAL DIVISION

December 23, 1986

OPINION

CORSO, Judge:

On August 8, 1985, Petitioners, Laura L. Sugalski, Charles E. Roop, Sr. and Charles E. Roop, Jr., filed petitions for return of property against Respondent, Jay Cochran, Jr., Commissioner, Pennsylvania State Police (hereinafter referred to as "Commonwealth"), seeking the return of money seized by the Pennsylvania State Police from their residences on January 29, 1985, and from a safe deposit box on January 30, 1985 [1]. After hearings on said Petitions, the following Order was entered by this Court on July 31, 1986:

"AND NOW, this 31st day of July, 1986, pursuant to Petitions for Return of Property, after hearings on January 30, 1986, April 14, 1986 and April 15, 1986, limited in scope by agreement of counsel to a determination of derivative contraband status without determination of the legality of search warrants and subsequent searches of Petitioners' homes, and accepting as true for purposes of this proceeding only the affidavit in support of search

1. In addition, on January 27, 1986, Petitioners filed a Motion to Suppress which addressed evidence obtained from interception of wire communication. This was not heard by the Court based upon agreement of counsel at the hearings and embodied in this Court's Order of July 31, 1986 set forth hereinafter.

warrants for the safe deposit box; and consideration of Memoranda of Law submitted and briefs of counsel, it is hereby ORDERED and DECREED that:

I. The Petition for Return of Property of Charles E. Roop, Sr. is granted, the following property is found not to be derivative contraband and shall be returned to Petitioner forthwith:

(a) $1,175.00 U.S. currency seized from Petitioner's home on January 29, 1985; and

(b) $508,700.00 seized from a safe deposit box in the Holding Company, Bryn Mawr, Pennsylvania, on January 30, 1985.

II. The Petition for Return of Property of Charles E. Roop, Jr. is granted, the following property is found not to be derivative contraband and shall be returned to Petitioner forthwith:

(a) $7,940.00 U.S. currency seized from Petitioner's home on January 29, 1985.

III. The Petition for Return of Property of Laura L. Sugalski is granted in part and denied in part:

(1) The following property is found not to be derivative contraband and shall be returned to Petitioner forthwith:

(a) $15,500.00 U.S. currency seized from a cash box in the clothes closet of master bedroom in Petitioner's home on January 29, 1985;

(b) $12,429.00 U.S. currency seized from a metal box under the bed of master bedroom of Petitioner's home on January 29, 1985; and

(c) Two $25.00 savings bonds and two $50.00 savings bonds all in the name of 'Mrs. Rosetta Keaton' seized from a kitchen cabinet in Petitioner's home on January 29, 1985.

(2) The following property is found to be derivative contraband and is forfeitable to the Commonwealth of Pennsylvania:

(a) $50.00 U.S. currency seized from kitchen counter in Petitioner's home on January 29, 1985; and

(b) $1,626.00 U.S. currency and $2.00 U.S. currency seized from kitchen cabinet in Petitioner's home on January 29, 1985."

Notice of Appeal to the Superior Court of Pennsylvania was filed by the Commonwealth on August 22, 1986. The Statement of Matters Complained of on Appeal filed on September 9, 1986, raises two issues: whether the Court placed an evidentiary burden on the Commonwealth which is greater than that required under 47 Pa.S. § 6–602(e) as applied to 18 Pa.C.S. § 5513(b); and whether the Court abused its discretion in ordering the return of the seized money.

The facts may be summarized as follows:

On January 29, 1985, Search Warrants were obtained for Petitioners' homes by the State Police to search for and obtain evidence of suspected illegal gambling. One warrant was executed upon the home of Charles Roop, Sr., where $1,175.00 in cash, one number's play, and a tally sheet for two days were found. Another warrant was executed upon the home of Charles Roop, Jr., where $7,940.00 in cash, tally sheets, rice paper, line sheets, numbers bets, and sports bets were found. The proximity of the above cash to the gambling paraphernalia was not known by Troopers John L. Bergan or Joseph Moran who testified for the Commonwealth or otherwise established by the Commonwealth.

Also, on January 29, 1985, a search warrant was executed upon the Sugalski home by three Pennsylvania State Troopers, including Troopers Bergan and Levingood. Cash in the sum of $15,500.00 was found in a steel box on a closet shelf of a second floor front bedroom. No gambling paraphernalia was located in this box. A second steel box was found under the bed in the same bedroom which contained items relating to a safe deposit box at the Bryn Mawr Holding Company, Bryn Mawr, Pennsylvania, cash in the amount of $12,429.00 [2], children's birth certificates, insurance policies,

2. This amount of money was grouped by Trooper Bergan with an amount of money found in the dining room china closet. No gambling paraphernalia was found in the dining room.

personal papers, etc. No gambling paraphernalia was found in this box. All items were left in the box with the exception of the safe deposit documents and cash which were taken to the kitchen. Although Trooper Bergan took the safe deposit box documents, he was not sure "whether it actually pertained to the case or not". There was nothing about the cash found in the bedroom to indicate, in any manner whatsoever, that it had been used for illegal gambling, or any other unlawful purpose. No gambling paraphernalia was found in the bedroom, or anywhere on the second floor. However, the money was seized by the Commonwealth.

The first floor rear kitchen of the Sugalski home was then searched. In a top kitchen cabinet, three calculators and blank sheets of paper were found. In a lower cabinet the Troopers found among other things, $1,626.00 and $2.00 in cash, two $50.00 and two $25.00 savings bonds in the name of "Mrs. Rosetta Keaton", rice paper, numbers bets, weeklys, dailys, and, yearlys. Fifty ($50.00) Dollars in cash and numbers bets were found on the kitchen counter. All of the above items were seized.

The following day, an Application for a Search Warrant for safe deposit box 1H–9, was presented, and the Search Warrant was issued. Upon executing the warrant at the Bryn Mawr Holding Company, the sum of $508,700.00 was found in the safe deposit box and seized by the Commonwealth.

The essence of the Commonwealth's first argument is that the Court erred when it failed to place the burden upon Petitioners to prove that the seized money was gained or possessed lawfully as required under 47 Pa.S. § 6–602(e). The statutory provisions relied upon by the Commonwealth state:

The Crimes Code, 18 Pa.C.S.A. § 5513(b):

"Confiscation of gambling devices.—Any gambling device possessed or used in violation of the provisions of subsection (a) of this section shall be seized and forfeited to the Commonwealth. All provisions of law relating to

the seizure, summary and judicial forfeiture, and condemnation of intoxicating liquor shall apply to seizures and forfeitures under the provisions of this section."

The Liquor Code, 47 Pa.S.A. 6–602(e):

"At the time of said [forfeiture] hearing, if the Commonwealth shall produce evidence that the property in question was unlawfully possessed or used, the burden shall be upon the claimant to show (1) that he is the owner of said property, (2) that he lawfully acquired the same, and (3) that it was not unlawfully used or possessed."

The Commonwealth concedes that "money is not, ordinarily, itself an instrumentality of gambling" *Fairmount Engine Company v. Montgomery County*, 135 Pa.Super. 367, 371, 5 A.2d 419 (1938), however, it contends that money is subject to seizure and forfeiture along with gambling devises when the circumstances clearly show that the money formed an integral part of an illegal gambling operation. Thus, the Commonwealth contends that the seized money is derivative contraband of gambling operations. The leading case concerning the forfeiture of money alleged to be derivative contraband of illegal gambling is *Rosen v. LeStrange*, 120 Pa.Super. 59, 61–62 [181 A. 797] (1935):

"Money may, nevertheless, be subject to seizure, along with *contraband* gambling devices, apparatus of instrumentalities, (*Commonwealth v. Sinn*, 82 Pa.Superior Ct. 482, 484; *Commonwealth v. Kaiser*, 80 Pa.Superior Ct. 26, 28) when the circumstances are such that it is clearly apparent that it formed an integral part of the illegal gambling operation and, being commingled with other such money, had not, previous to the seizure, been reclaimed and taken back into his own possession by the player, nor been received and reduced to the exclusive possession and ownership of the winner, or owner of the gambling device, or proprietor of the gambling establishment. Thus money found in a gambling slot machine, when seized, may be held with the machine and be confiscated by the Commonwealth; for while it had

passed out of the ownership of the players, who inserted it in the machine, it had not been reduced to the possession and ownership of the proprietor; he does not become the owner of the money while it is contained in a receptacle within the illegal and contraband gambling machine. So money found lying on a roulette wheel, or rouge et noir table, when the gambling device is seized, if so commingled that its prior ownership has been lost, may, in like manner, be subject to confiscation, *Com. v. Sinn*, supra, Pa. 484. Money received for lottery tickets and 'policy' slips and from playing 'numbers,' and held awaiting the drawing of the lottery, or the determination of the winning number, if earmarked or segregated so as to be identified as part of the gambling operation, may likewise be confiscated as contraband by the authorities with the gambling instrumentality: *Appeal of Joe Curcio*, 106 Pa.Superior Ct. 53, 161 A 627."

Forfeiture proceedings have been held to be civil in rem proceedings, which are quasi criminal in character. *One Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). The burden is upon the Commonwealth to show, by original proof, that the property sought to be returned must, instead, be forfeited. *Commonwealth v. 3 Halves of Beer*, 162 Pa.Super. 191, 56 A.2d 333 (1948). Since the proceeding is civil in rem, the Commonwealth is not held to the same degree of proof required in a criminal case, it need only produce sufficient evidence to satisfy, reasonably, an unbiased mind to that degree of certainty which a judicial disposition of the issue requires. *Urban's Appeal*, 148 Pa.Super. 101, 24 A.2d 756 (1942); *Graham v. DiJoseph*, 74 Montg. Co. L.R. 114 (1957). The Commonwealth's burden, essentially a preponderance of the evidence, has also been stated to be:

"... whether a judicial fact finder could reasonably be satisfied from all the evidence ... [citation omitted] ... that it (the money) formed an integral part of the illegal gambling operation and, being commingled with other such money, had not, previous to seizure, been reclaimed

and taken back into his own possession by the player, nor been received and reduced to the exclusive possession and ownership of the ... proprietor of the gambling establishment. *Rosen v. LeStrange*, 120 Pa.Superior Ct. 59, 61, 181 A.797." *Commonwealth v. Petrillo*, 158 Pa.Super. 354, 45 A.2d 404 (1946).

It must be noted that forfeiture is a drastic remedy that is not favored by the law and that such statutes must be strictly construed and will not be extended beyond their plain, ordinary and usual meaning. See 37 C.J.S., Forfeitures § 46; *Zafino Estate*, 375 Pa. 501, 100 A.2d 60 (1953); *Nave v. Commonwealth*, 74 Montg.Co.L.R. 410 (1958).

Considering the safe deposit box, what evidence has the Commonwealth presented to establish its derivative contraband contention? The Commonwealth's theory is that an ongoing gambling activity, such as alleged to have been conducted by Petitioners, would need a bank, a reserve to back up the winners, and the money in the safe deposit box constituted same. Although the Commonwealth states that the courts have somewhat expanded the proximity nexus, there is no connection with gambling, gambling devises or paraphernalia in this case; nothing in the steel box, in the bedroom or even on the second floor of the Sugalski home. In addition, the steel box contained personal items such as birth certificates, insurance policies and personal papers.

Was the money in the safe deposit box, with the access documents in a steel box under the bed on the second floor of the Sugalski home, reduced to the exclusive possession and ownership of the Petitioner? Clearly, and this Court heard no evidence to lead it to conclude otherwise.

Was the money in the safe deposit box held pending the determination of a winner? Was it earmarked or segregated so as to be identified as an integral part of the gambling operation? The money was deposited in the safe deposit box on June 14, 1984, and, according to the records of the Holding Company, *nobody* entered the safe deposit box from the date it was opened until January 30, 1985, the date of the search and seizure. In excess of seven month had

passed without anybody touching the money. This fact is fatal to the Commonwealth's theory. The Commonwealth has provided absolutely no basis to conclude that this money was an integral part of the gambling operation and was simply awaiting the determination of a winner. The Commonwealth also asserts that the money must be the proceeds of illegal gambling. This constitutes a boot strap argument based upon the Commonwealth's suspicion, not evidence. See, *Commonwealth v. Tornetta*, 76 Montg.Co. L.R. 565 (1960).

The additional seizures of money at issue in this case are:

(1) The $1,175.00 cash, found somewhere in the home of Charles Roop, Sr.;

(2) The $7,940.00 cash, found somewhere in the home of Charles Roop, Jr.;

(3) The $15,500.00 cash, found in a steel box, on a closet shelf, in the Master bedroom, of the Sugalski home;

(4) The $12,429.00 consisting of $7,000.00 cash, found in a steel box under the bed in the Master bedroom of the Sugalski home, and $5,429.00 cash, in the china closet in the dining room of the Sugalski home.

The Commonwealth must meet its burden with regard to each seizure for forfeiture to occur. The Commonwealth's evidence established the following circumstances with regard to each of the seizures:

(1) No gambling paraphernalia was found with any of the money;

(2) No gambling paraphernalia was found in the vicinity or even in the same room with any of the money; and

(3) There was nothing about the money to indicate that it was being used, or had been sued, for illegal gambling, or any other unlawful purpose.

The money seized at the Sugalski home was located in a china closet in the dining room, and in the master bedroom on the second floor. The money in the bedroom was located in a locked steel box in the clothes closet, and in a locked steel box under the bed with personal papers. The Commonwealth could not even establish where the money seized

380

at either the Charles Roop, Sr. or Charles Roop, Jr. home was located. Again, the Commonwealth is attempting to utilize conjecture and suspicion in place of evidence to expand the law beyond its present statutory and decisional posture.

The Commonwealth has failed to meet its burden of establishing that any of the seized money is an integral part of an illegal gambling operation; that prior to seizure it had not been received and reduced to the exclusive possession and ownership of Petitioners; or that it was earmarked or segregated so as to be identified as part of the gambling operation.

Based upon the foregoing, the Commonwealth concedes that the seized cash is not a "gambling devise possessed or used in violation of the provisions of subsection (a)", and has failed to "produce evidence that the property in question was unlawfully possessed or used" as required by 18 Pa.C.S.A. § 5513(b) and 47 Pa.S.A. 6–602(e). As such, the burden does not shift to Petitioners to show that they are the owners, that they lawfully acquired the property and that it is not unlawfully used or possessed.

Accordingly, the Order of July 31, 1986, is in accord with the law, does not constitute an abuse of discretion and must be affirmed.

OLSZEWSKI, Judge, dissenting:

In this appeal from the grant of a petition for the return of property, we are asked to determine whether over one-half million dollars seized during a raid on a gambling operation was derivative contraband and, consequently, subject to forfeiture to the Commonwealth. I agree with the implicit holding of the majority that money, in general, may be subject to forfeiture pursuant to 18 Pa.C.S.A. Sec. 5513. Because I believe the Commonwealth has proved that all the money confiscated here was derivative contraband, however, I disagree with the majority's decision to return the seized property to appellees.

On January 29, 1985, police officers and Pennsylvania State Police troopers executed search warrants on the homes of appellees, Charles E. Roop, Sr., Charles E. Roop, Jr., and Laura L. (Roop) Sugalski. The search warrants were based upon information regarding the illegal gambling activities of those individuals. Upon execution of the search warrants, the police seized $1,175 in currency, one numbers play, and a two-day tally sheet from the home of Charles E. Roop, Sr. From the home of Charles E. Roop, Jr., police seized $7,940 in currency, tally sheets, rice paper, lined sheets, numbers bets, and sports bets. The police seized the following items from the home of Laura L. Sugalski:

1. $50 cash and a small slip of paper containing numbers bets found on the kitchen counter;

2. from the kitchen cabinets: $1,626 cash, a $2–bill, two $25 savings bonds, two $50 savings bonds (all bonds were issued in the name of "Rosetta Keaton"), $200 cash, rice paper, sheets of paper containing numbers, a red notebook containing numbers, a yellow pad containing numbers, a steno book containing numbers, and three calculators;

3. approximately $5,229 in currency was found in the dining room china cabinet; and

4. from the second floor master bedroom, the following: a. $15,500 in currency and a written note containing a dollar figure were in a metal box on a shelf in the closet; and

b. Another metal box under the bed contained approximately $7,000 in currency, a safe-deposit box lease with directions to the location of the box, safe-deposit box keys, a magnetic card, a photograph of Charles E. Roop, Sr. with the name "Robert Cambell," and a photogrpah of Laura Sugalski with the name "Kathy Price."

On January 30, 1985, police executed a search warrant on the safe-deposit box which was leased to "Robert Cambell and Kathy Price." A total of $508,700 was seized from that

box. Upon the seizure of these items and currency, appellees [1] filed a petition pursuant to Pa.R.Crim.P. 324 [2] for the return of the currency. After a hearing on the matter, the trial court ordered:

1.  the $1,175 in currency seized from the home of Charles E. Roop, Sr., and the $508,700 in currency seized from the safe-deposit box were not derivative contraband and, thus, were to be returned to Mr. Roop;

2.  the $7,940 in currency seized from the home of Charles E. Roop, Jr. was not derivative contraband and was to be returned to Mr. Roop; and

3.  the $15,500 in currency seized from the metal box in the closet of the master bedroom, the $12,429 in currency seized from a metal box under the bed and the four savings bonds seized from the kitchen cabinet were not contraband and, thus, were to be returned to Mrs. Sugalski.

In short, the only property found to be derivative contraband and, consequently, forfeitable to the Commonwealth were a few items from Mrs. Sugalski's home: the $50 in currency seized from the kitchen counter; and, from the kitchen cabinet, the $1,626 in currency and the $2–bill. The

1.  Subsequent to the filing of this petition, Charles E. Roop, Jr. and Charles E. Roop, Sr. died. Sharon Roop was thereafter substituted as a party to the petition.

2.  Pa.R.Crim.P. 324 provides as follows:
    **Rule 324. Motion for Return of Property**
    (a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.
    (b) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.
    (c) A motion to suppress evidence under Rule 323 may be joined with a motion under this rule.

Commonwealth thereafter filed this timely appeal from the order of the trial court.[3]

The Commonwealth first asserts that pursuant to Section 5513 of the Crimes Code, the currency was subject to forfeiture. The majority implicitly accepts the Commonwealth's argument, a decision in which I join. Section 5513(b) provides:

> **(b) Confiscation of gambling devices.**—Any gambling device possessed or used in violation of the provisions of subsection (a) of this section shall be seized and forfeited to the Commonwealth. All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of intoxicating liquor shall apply to seizures and forfeitures under the provisions of this section.

18 Pa.C.S.A. Sec. 5513(b).

A literal reading of this provision indicates that only "gambling devices" are subject to forfeiture. It has long been established, however, that money may be seized and forfeited as derivative contraband,[4] if it is clear that the currency formed an integral part of a gambling operation and it has not been received, reclaimed or reduced to an

3. This appeal is properly before us. According to the record, no criminal actions have been taken and held over in court against appellees. Consequently, this appeal is not interlocutory. *See Commonwealth v. Lewis,* 288 Pa.Super. 198, 204–05, 431 A.2d 357, 360 (1981) (appeal from demand of petition for return of property was interlocutory where criminal prosecution was pending). In addition, the appeal was properly taken from the order of the court. No post-trial motions need be filed where a Rule 324 petition is unrelated to a criminal proceeding. *Cf. Commonwealth v. Myers,* 298 Pa.Super. 272, 274–78, 444 A.2d 1170, 1172–1173 (1982) (Rule 324 petition filed with post-verdict motions); *Commonwealth v. Setzer,* 258 Pa.Super. 236, 392 A.2d 772 (1978) (where a Rule 324 petition was not filed with post-trial motions or at sentencing, the issue was not preserved for appellate review).

4. There is a distinction between derivative contraband and contraband per se. " 'Contraband per se is property the mere possession of which is unlawful.... Derivative contraband is property innocent by itself, but used in the perpetration of an unlawful act.' " *Petition of Maglisco,* 341 Pa.Super. 525, 528, 491 A.2d 1381, 1382 (1985), *quoting, Commonwealth v. Fassnacht,* 246 Pa.Super. 42, 46, 369 A.2d 800, 802 (1977). There is no question that the currency seized here was not contraband per se. Rather, the question before us is whether currency is subject to forfeiture pursuant to Section 5513.

individual's exclusive possession and ownership. *See e.g., Fairmount Engine Co. v. Montgomery County,* 135 Pa.Super. 367, 5 A.2d 419, 420–421 (1939). To my knowledge, neither the Supreme Court nor this Court has had occasion to question the propriety of a forfeiture of money pursuant to Section 5513(b). This Court has determined, however, that pursuant to a similar provision of the Drug, Device and Controlled Substance Act, money seized during an arrest for the illegal sale of drugs was derivative contraband and, consequently, was forfeitable even though that statute did not expressly authorize the forfeiture of money. *Lappas v. Brown,* 335 Pa.Super. 108, 483 A.2d 979 (1984). In addition, the Commonwealth Court of Pennsylvania has applied the common law test for forfeiture under *Fairmount Engine Co., supra,* in a Section 5513(b) proceeding. *In re $13,561.50,* 72 Pa.Commw. 451, 456 A.2d 1140 (1983).[5] I am persuaded by the reasoning of *Lappas* and *In re $13,561.50.* Consequently, I conclude that pursuant to Section 5513(b), money may be forfeited as derivative contraband.

Having made this determination, I turn to the application of this rule. Section 5513(b) specifically provides that the forfeiture procedures governing in the Liquor Code, 47 Pa.S.A. Sec. 6–601 *et seq.,* are to apply in a Section 5513 proceeding. 18 Pa.C.S.A. Sec. 5513(b); *Commonwealth v. Two Electronic Poker Game Machines,* 502 Pa. 186, 197–99, 465 A.2d 973, 979 (1983) (applying the forfeiture provision of the Liquor Code to a gambling case). Section 6–602 of the Liquor Code is particularly instructive:

### Sec. 6–602. Forfeiture proceedings

\*  \*  \*  \*  \*  \*

5. *In re $13,561.50* was before the Commonwealth Court apparently as an appeal from the denial of a petition for the return of money seized pursuant to the Liquor Code. Generally, an appeal from the grant or denial of forfeiture is properly presented before the Commonwealth Court. *See Commonwealth v. 84–Quart Bottles Bianco DiVerona Wine,* 250 Pa.Super. 544, 546–48, 378 A.2d 1282, 1283–1284 (1977). *See also* 42 Pa.C.S.A. Sec. 762(a)(1). Because appellee has not objected to the jurisdiction of this Court, I believe we have properly exercised our discretionary power to consider this appeal. *See* 42 Pa.C.S.A. Sec. 702; *Newman v. Thorn,* 359 Pa.Super. 274, 518 A.2d 1231 (1986) and cases cited therein.

(e) At the time of said (forfeiture) hearing, if the Commonwealth shall produce evidence that the property in question was unlawfully possessed or used, the burden shall be upon the claimant to show (1) that he is the owner of said property, (2) that he lawfully acquired the same, and (3) that it was not unlawfully used or possessed.

In the event such claimant shall prove by competent evidence to the satisfaction of the court that said liquor, alcohol or malt or brewed beverage, or still, equipment, material, utensil, vehicle, boat, vessel, container, animal or aircraft was lawfully acquired, possessed and used, then the court may order the same returned or delivered to the claimant(.)

47 Pa.S.A. Sec. 6–602(e).

Pursuant to this provision, the Commonwealth bears the burden of proving that the property was unlawfully possessed or used. Where derivative contraband is involved, unlawful possession or use is established by proof that the property formed an integral or essential part of the gambling activities. In a forfeiture proceeding, the Commonwealth must sustain this burden by a preponderance of the evidence. *Estate of Peetros v. County Detectives*, 341 Pa.Super. 558, 561–62, 492 A.2d 6, 8 (1985); *Petition of Maglisco*, 341 Pa.Super. 525, 530–31, 491 A.2d 1381, 1384 (1985); *Lappas v. Brown*, 335 Pa.Super. 108, 115–16, 483 A.2d 979, 983 (1984); *Commonwealth v. Myers*, 298 Pa.Super. 272, 282, 444 A.2d 1170, 1175 (1982); *Commonwealth v. Landy*, 240 Pa.Super. 458, 469–71, 362 A.2d 999, 1005 (1976) (*en banc*). If the Commonwealth's burden has been satisfied, the burden is then upon the claimant seeking return of the property to show ownership, lawful acquisition, and lawful use or possession of the property. 47 Pa.S.A. Sec. 6–602(e). *See generally, Commonwealth v. Two Electronic Poker Game Machines*, 502 Pa. at 197–200, 465 A.2d at 979–980.

Having set forth the guiding principles, I turn to the merits of the Commonwealth's claim that the trial court

erred in finding insufficient evidence that the currency seized here was subject to forfeiture as derivative contraband. The trial court concluded that there was no connection between the gambling operation and the currency seized from any of the homes or the safe-deposit box. In particular, the court noted that no gambling paraphenalia was found with or near the money and nothing about the money indicated it was or had been used for an unlawful purpose. As a result, the court held the Commonwealth failed to meet its burden of showing that the currency was an integral part of an illegal gambling operation.

While the majority here affirms the decision of the lower court, I agree with the Commonwealth that the trial court ignored the evidence of record. At the forfeiture hearing, the Commonwealth presented evidence which indicated the existence of an extensive, on-going gambling enterprise. Based upon information gathered during an extended investigation and documents seized during the raids, an expert witness for the Commonwealth described in detail the activities of the participants. The Commonwealth's expert witness opined that given the evidence relating to the numbers activities, the gross income of the gambling operation was $40,000 per week or approximately $2,200,000 per year. (Notes of hearing, 4/15/86 at 89). Moreover, it was the witness's conclusion that a bookmaking operation of this size would have had large sums of money available to settle wagers. (Notes of hearing, 4/15/86 at 129). From this testimony and the documents produced at the hearing, it could reasonably be inferred that the money seized was accumulated from the gambling transactions and served as a readily available reserve to be used in the gambling operation. Accordingly, I am satisfied that the Commonwealth established by a preponderance of the evidence that the currency seized had become an integral part of the gambling activities and, hence, was unlawfully possessed or used. *Cf. Commonwealth v. Two Electronic Poker Game Machine,* 502 Pa. at 195–99, 465 A.2d at 978–979 (Supreme Court reversed conclusion of hearing court; Commonwealth's burden of proof was satisfied); *Commonwealth v.*

*Doranzo,* No. 1368 Philadelphia 1983 (Pa.Super. 7/23/87) (reversing trial court's finding that the Commonwealth had not satisfied its burden of proof).

The burden was then upon appellees who were required to establish ownership, lawful acquisition, and lawful use or possession of the money. 47 Pa.S.A. Sec. 6–602(e). Appellees presented no evidence at the hearing. The attorney for appellees did, however, cross-examine the Commonwealth's witness about the currency contained in the safe-deposit box. That witness admitted that the box was opened on June 15, 1984 and, thereafter, was not touched until it was seized by the police on January 30, 1985. The fact that the safe-deposit box was not opened for some time does not convince me that the money was lawfully acquired, possessed or used. At best, the cross-examination merely demonstrates that the police could not say with absolute certainty that the money was not acquired or used in the illegitimate operation. The Commonwealth is not required, however, to prove its case to an absolute certaintude. Having shown that the currency was more likely to have been unlawfully acquired and used, appellees were required to prove otherwise. This they failed to do. Consequently, the court erred in granting appellees' petition for the return of the currency.

I find no error, however, in the grant of the petition for the return of the four bonds seized from the home of Mrs. Sugalski. By implication, property is not an integral part of an illegal activity if it has been reduced to an individual's exclusive possession or ownership. The Commonwealth presented no evidence indicating that the government bonds were either part of the gambling reserve or accumulated from gambling activities. Moreover, the bonds were issued in the name of a party unrelated to the proceedings here. The court, therefore, properly granted the petition for the return of the bonds.

In sum, I would find that the currency was subject to forfeiture as derivative contraband. Where, as here, the Commonwealth's evidence established it was more likely

than not that the money seized was derived from and formed an integral part of the gambling operation, the money was forfeitable in the absence of any evidence indicating it had a legitimate and lawful source.

Accordingly, I would reverse the order of the trial court insofar as the seized property was returned to appellees.