444 A.2d 1170

**COMMONWEALTH of Pennsylvania**

v.

**Barbara Jean MYERS.**

**Appeal of DEPARTMENT OF REVENUE.**

Superior Court of Pennsylvania.

Argued Sept. 23, 1981.

Filed Feb. 5, 1982.

Reargument Denied May 18, 1982.

Petition for Allowance of Appeal Denied Sept. 14, 1982.

274

Christos A. Katsaounis, Harrisburg, for appellant.

Barbara Orsburn Stump, York, for appellee.

Before BROSKY, McEWEN and BECK, JJ.

BECK, Judge:

On April 21, 1979, pursuant to a search warrant, the police searched the residence of Barbara Jean Myers and her husband, and found and seized quantities of marijuana stored throughout the premises. At the same time, they searched Ms. Myers' pocketbook, and found and seized three thousand, seven hundred and ninety dollars ($3790.) in cash. Ms. Myers was arrested and charged with possession of a controlled substance with intent to deliver, and with conspiracy to possess a controlled substance with intent to deliver. Ms. Myers was not charged with sale or delivery of a controlled substance. The money seized from Ms. Myers was placed in the custody of the District Attorney of Adams

County. On pretrial motions, Ms. Myers sought return of the money, and this was refused on the grounds that it was to be used as evidence at trial.

On October 10, 1979, the Pennsylvania Department of Revenue filed a tax lien against Ms. Myers and her husband in the amount of $311,389.01 for taxes owed. Pursuant to the tax lien, the Department of Revenue prepared a Writ of Execution and obtained service of the Writ on the District Attorney of Adams County, seeking to attach the $3790. in his custody.

Apparently, the District Attorney neither delivered up the fund to the Department of Revenue in response to the Writ nor did he notify the Department of Revenue of his refusal to do so. It appears that he simply ignored the Writ of Execution, continuing to hold the money for possible use as evidence.

On November 1, 1979, following trial by jury, Ms. Myers was found guilty of the criminal charges filed against her. The money was not introduced as evidence at trial. With her omnibus post-verdict motions, she filed a Motion under Pa.R.Crim.P. 324 for Return of Property, seeking return to her of the money seized by the police. On March 31, 1980, the motion was denied on the grounds, as will be further discussed below, that the fund represented derivative contraband and was therefore forfeited to the state. The judge deferred specific determination of the disposition to be made of the fund until sentencing.

On November 12, 1980, more than a year after the end of the criminal trial, sentencing hearing was held and sentence imposed. As a part of her sentence on the criminal charges, the court imposed a fine of $5000, and directed that "the sum of $3790. presently in the possession of the Commonwealth be first applied to the costs of this proceeding and thereafter shall be applied to the fine imposed in this matter." Although the record reflects that the parties were aware of the tax lien filed by appellant Department of Revenue, the court was not made aware of the writ served upon the District Attorney, and no notice either of denial of

the Rule 324 Motion or of the confiscation of the money by fine was directed to be given to the Department of Revenue. Actual notice of this disposition was given to the Department of Revenue by a copy of the order of sentence forwarded by the District Attorney to the Assistant Attorney General by letter dated November 26, 1980. The appellant admits receipt of notice "on or about November 26, 1980."

Twenty one days later, on December 17, 1980, the Department of Revenue filed a Motion to Amend the Order of Sentence, seeking deletion of the portion which directed that the money be applied as costs and fine and seeking payment over to Department of Revenue of the $3790. The court denied this motion on March 3, 1981, and the Department of Revenue filed notice of this appeal on March 9, 1981. The Department of Revenue founds its appeal on the lower court's denial on March 3, 1981 of its Motion to Amend the Order of Sentence. The Department of Revenue bases its claim to the money on the tax lien and Writ of Execution served on the District Attorney of Adams County, asserting this to be a claim "prior" to that of Adams County based upon confiscation and distribution as costs and fine.

## JURISDICTION AND STANDING

In its opinion, the lower court found that the Department of Revenue had standing to seek amendment of the sentence as it related to funds claimed by it, but held that the Department of Revenue was barred from asserting its claim for failure to seek modification of the sentencing order beyond the 10 days permitted in Pa.R.Crim.P. 1410 for seeking modification of sentence.

■ We agree that the Department of Revenue has standing in this matter. The interest asserted by the Department is directly related to the fund which was disposed of in the sentencing order and it has an immediate pecuniary interest in the disposition of the fund which was finally adjudicated in connection with the sentencing order. Under the principles enunciated in *Atlee Estate*, 406 Pa. 528, 532, 178 A.2d 722, 724 (1961), citing *Lansdowne Borough Board of Adjust-*

*ment Appeal*, 313 Pa. 523, 525, 170 A. 807, 868 (1934), standing is established.

■ As well stated by the appellant in its brief, upon the filing of the tax lien, appellant "becomes in a sense a co-owner with the taxpayer, Ms. Myers, of the personal property of the taxpayer to the extent of the lien." See *e.g. Sager v. Burgess*, 350 F.Supp. 1310, 1312 (E.D.Pa.1972); *Simpson v. Thomas*, 271 F.2d 450, 452 (4th Cir. 1959). Thus, appellant had the same rights as did the taxpayer to assert claim to the fund.

The question remains however, as to whether appellant Department of Revenue timely asserted its claims, by the filing of its motion within 21 days of knowledge of disposition of the fund.

■ Under the present facts, the notice to the taxpayer cannot be imputed to the Department of Revenue, and the period in which appellant was required to file its motion or to appeal cannot be measured from the date on which the taxpayer received notice either of the determination of possessory rights to the fund (March 31, 1980, denial of post verdict motion) or of disposition of the fund (Nov. 12, 1980, order of sentence). *Cf. Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) holding that due process requires that adjudication of a property right be preceded by notice and an opportunity to be heard. However, once actual notice was received by the appellant, it was required to pursue the procedures available to it to be heard with reasonable diligence.[1]

■ Although appellant framed his petition as a Motion to Amend the Order of Sentence, appellant sought extraordinary relief not covered by the Rules of Criminal Procedure. Appellant clearly had a right to petition the lower court for relief, and that right must be held to have continued for a reasonable period of time. We cannot say that 21 days was

1. The ten day limit of Pa.R.Crim.P. 1410, in which a defendant can petition for modification of sentence, does not apply inasmuch as the Rule itself is inapplicable to one in the unusual position of appellant.

an unreasonable delay in asserting such rights, particularly in view of the very novelty of the situation appellant was faced with. The lower court therefore had jurisdiction of the issue and we have jurisdiction to determine this appeal.

## POSSESSORY RIGHT OF THE TAXPAYER

[5] Leaving aside for the moment, the question of the effect of service of a writ of execution on the District Attorney as custodian of the money seized on arrest, we must first determine the possessory right of the taxpayer on the date the writ was served. It is clear that the possessory rights of the Department of Revenue could rise no higher than those of the taxpayer. If Ms. Myers had no possessory right on October 29, 1979, the date the writ was served, then there was nothing for the Department of Revenue to attach.

In determination of Ms. Myers' motion under Pa.R. Crim.P. 324, and pursuant to the provisions of Rule 324(b)[2], the lower court ruled that the $3790. in cash was "derivative contraband." If that was its character on the date the court made its determination, March 31, 1980, then that was its character on April 21, 1979 when the fund was seized. The determination by the court must attach nunc pro tunc to the date of seizure. "Contraband," by its very term, is not that to which possession may attach, contraband being that which it is illegal to possess.[3] Thus, if the court's determina-

2. Appellant's brief refers the court to the Forfeiture Act under the Controlled Substance, etc., Act, 35 Pa.C.S. § 780–128, as the act "under which forfeiture is sought," and analyzes its terms for a determination of title to the money at various points. § 780–128 is inapplicable. That statute is most specific in enumerating the property which is subject to forfeiture, and nowhere does the act provide in any way for the forfeiture of money, nor was any Petition for Forfeiture under said Act ever filed in this case. The only provision of Pennsylvania law under which the court in this instance could refuse to restore the property to Ms. Myers is Pa.R.Crim.P. 324(b), which reads, in relevant part, as follows:

. . . the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

3. See e.g. *Commonwealth v. One 1958 Plymouth Sedan*, 414 Pa. 540, 543, 201 A.2d 427, 429 (1964); *U. S. v. Jeffers*, 342 U.S. 48, 53, 72

tion was correct, the taxpayer, Ms. Myers, had no possessory right to the money at any time after April 21, 1979 and neither the lien filed October 10, 1979 nor the Writ of Execution served October 29, 1979 could relate to the fund. The lower court, however, was in error in its determination of the character of the fund.

■ In making its determination, the lower court relied upon *Commonwealth v. Landy*, 240 Pa.Super. 458, 362 A.2d 999 (1977). The court properly held that *if* the property sought to be returned was "directly derived from" or "directly traceable to" the sale of a contraband substance, it was "derivative contraband." The evidence relied upon for making the determination, by agreement between the Commonwealth and Ms. Myers, was the trial record. The trial record, and the jury verdict, related solely to possession by the taxpayer of marijuana with the intention of delivering it. No evidence was presented of any sale of marijuana or of anything else, and no attempt was made by the Commonwealth to show any specific transaction.

In its opinion, the lower court states as its sole basis for determining the cash to be "derivative contraband" that:

> Defendant's version of the source of the money [4] appears to be unreasonable.

> \* \* \* \* \* \*

> It would seem much more reasonable to infer that the money was directly derived from the sale of marijuana.

The court's reliance upon *Commonwealth v. Landy, supra* was misplaced. *Landy* did hold that, under the narrow circumstance of that case, money could be found to be "derivative contraband" subject to forfeiture or confiscation

S.Ct. 93, 96, 96 L.Ed. 59, 65 (1951) (there is a property right in contraband sufficient to support a motion to suppress, but no possessory right); 6 Am.Jur.2d, Search and Seizure § 102, (contraband is not subject to attachment); contraband is "property which it is unlawful . . . to possess" Webster's Third New International Dictionary, G.&C. Merriam Co. (1977).

**4.** The lower court's opinion reflects that defendant taxpayer was not actually examined as to the "source" of the money, but simply made the statement that she had no bank or safe place to keep the money.

as a fine under Rule 324(b). However, that case was far from holding that any money found in the possession of one who is also in illegal possession of contraband substances is "derivative contraband" unless the possessor comes forward with proof of the source of the money. On the contrary, *Landy* held that the Commonwealth had the burden of proof "by a preponderence of the evidence" that the money was "directly derived from and directly traceable to the sale of a contraband substance." *Id.*, 240 Pa.Super. at 470, 362 A.2d at 1005. In that case, the specific money held to be derivative contraband and subject to forfeiture was proven to have been received in return for specific delivery of a controlled substance in a specific transaction directly observed by the police. Once the Commonwealth had met that burden of proof, the court held that it did not have the further burden of proving that there had been no other money in the pocket into which the specific money was placed prior to that money being placed there. To have held otherwise would clearly have placed an impossible burden on the Commonwealth. In the instant case, however, the court placed no burden of proof whatsoever on the Commonwealth.[5] On the contrary, the court created its own "inference" that the money derived from an illegal sale based upon the fact that it was in the possession of one who was also in the possession of marijuana. Due process permits no such inference. The fund here in question, therefore, was improperly held to be derivative contraband, but was rather the property of the taxpayer.

We therefore hold that the taxpayer had a possessory right to the fund in question on October 29, 1980, the date appellant obtained service of its Writ of Execution.

## THE EFFECT OF THE WRIT OF EXECUTION

The lower court, although ruling that the Motion by appellant should be dismissed for failure timely to assert the

5. The lower court did recognize that the Commonwealth had the burden of proof by a preponderence of the evidence, but failed to require any evidence at all of *any* sale, let alone any evidence that the money was directly derived from and directly traceable to such sale.

claim, further ruled that the money was *in custodia legis* at the time of service of the Writ of Execution on the District Attorney of Adams County on October 29, 1979. The court ruled that as such it was not subject to attachment by the Department of Revenue pursuant to its tax lien. We agree.

Money which is held by the Commonwealth as the result of seizure pursuant to search warrant, or in connection with an arrest, is property which is subject to the order of court and is clearly *in custodia legis* and not subject to attachment or garnishment. *Weicht v. Automobile Banking Corporation*, 354 Pa. 433, 47 A.2d 705, 706 (1946). "The reason for the immunity of property in custodia legis is that to permit attachment or execution thereon by others would require a public officer to appear and defend a multitude of actions regarding the right to possession and would cause confusion and delay in the execution of legal process." *Ibid.* This rationale is clearly applicable to the circumstances of the present case. The fact that the particular lienor which sought execution was the Department of Revenue does not alter the fact that a dispute between owner and creditor or between competing creditors has no place in the course of a criminal prosecution. The District Attorney was not free to dispose of the money, nor was the fund being held solely for disposition to the tax creditor,[6] but was held for the specific purpose of presentation as evidence and for later determination of disposition by the court. Therefore, no matter how valid the claim of the Department of Revenue, asserted pursuant to its validly entered tax lien, it was without power to attach the property during the period it was *in custodia legis.*

**6.** *Weicht v. Automobile Banking Corporation, supra*, establishes that where money is being held by the court or its agent solely for distribution, without necessity for court ruling or further action, as for example where funds resulting from a Sheriff's Sale are held during the process of distribution, the money is not *in custodia legis* and immune to attachment. Where, however, as in this instance, the money is held for a purpose other than mere distribution, and must await further order of court before final disposition, it is in the custody of the court and is immune to execution or attachment.

We therefore hold that, although Ms. Myers had a possessory right in the fund in question, while the property was *in custodia legis* and prior to an order of court directing disposition of the money to Ms. Myers, the Department of Revenue was powerless to attach the fund and its Writ of Execution therefore attached nothing. The fund has now been paid toward costs and fine of Ms. Myers, subject only to a determination of her appeal of the underlying conviction.

The appeal of the Commonwealth of Pennsylvania Department of Revenue is therefore denied, and the order of the lower court refusing to release the money to appellant is affirmed.

McEWEN, J., concurs in the result.