## Sugalski v. Commonwealth

*Alan Jay Josel,* for plaintiffs.
*Laura Fredericks, deputy attorney general,* for defendants.

VOGEL, *P.J.,* March 23, 1989 — On March 14, 1988, plaintiffs, Laura Sugalski individually and as

executrix of the estate of Charles E. Roop Sr. and Sharon Roop as administratrix of the estate of Charles E. Roop Jr., initiated a civil action against defendants, Commonwealth of Pennsylvania and Ronald Sharpe, commissioner of the Pennsylvania State Police. The complaint, containing 10 counts, was based upon four theories of recovery. The first theory alleged breach of a fiduciary duty to invest moneys of plaintiffs that had been wrongfully seized by the commonwealth. The second basis for recovery implied breach of duty to comply with notices of levy filed by the U.S. Internal Revenue Service, thereby causing $60,000 in interest and penalties to accrue on the taxes owed, which they now seek to recover from the commonwealth.

Plaintiffs' third asserted theory involved interest due, under law, upon moneys wrongfully seized from the date of seizure until the date of return. Finally, plaintiffs contend that interest is due, under statute, upon a judgment against the commonwealth, from the date of the judgment until the date of payment.

On April 13, 1988, the commonwealth filed preliminary objections in the nature of a motion to dismiss. The commonwealth claims that this court lacks jurisdiction over the commonwealth and Ronald Sharpe, the commissioner of the Pennsylvania State Police. The commonwealth asserts, furthermore, that even if the common pleas court retains jurisdiction over the commonwealth and Ronald Sharpe, then plaintiffs' claims fail to state a cause of action becaues it is barred by the doctrine of sovereign immunity pursuant to 1 Pa.C.S. §2310, thus raising a demurrer to the complaint.

Oral argument was heard on November 18, 1988 and for the reasons set forth herein we grant the commonwealth's demurrer to this interesting proceeding.

## HISTORY

On January 29, 1985, pursuant to search warrants, the Pennsylvania State Police seized $1,175 from the home of Charles E. Roop Sr., $7,940 cash from the home of Charles E. Roop Jr., and $27,929 cash from the home of Laura Sugalski. The next day, January 30, 1985, using a fourth search warrant, the safe deposit box of Charles E. Roop Sr., was searched by the Pennsylvania State Police, and, as a consequence, $508,000 in cash was seized.

Subsequently, on August 8, 1985, Charles E. Roop Sr., Charles E. Roop Jr., and Laura Sugalski filed petitions for the return of those monies. After hearings on October 9, 1985, January 30, 1986, April 14, 1986 and April 15, 1986, limited in scope to a determination of derivative contraband status without determination of legality of search warrants and subsequent searches of petitioners' homes, the court ordered the following by order of July 31, 1986 of his honor, S. Gerald Corso:

"(I) That the petition for return of property of Charles E. Roop Sr., was granted, and the following property found not to be derivative contraband, to be returned forthwith:

"(a) $1,175 cash seized from petitioner's home on January 29, 1985; and:

"(b) $508,700 seized from a safe deposit box on January 30, 1985.

"(II) The petition for return of the property of Charles E. Roop Jr., was granted, and the following property found not to be derivative contraband, to be returned to the petitioner forthwith:

"(a) $7,940 U.S. currency seized from petitioner's home on January 29, 1985.

"(III) The petition for the return of the property of Laura L. Sugalski was granted in part and denied in part:

"(1) The following property was found not to be derivative contraband and was to be returned to the petitioner:

"(a) $15,500 cash seized from a cash box in the clothes closet of the master bedroom in the petitioner's home on January 29, 1985;

"(b) $12,429 cash seized from a metal box under the bed of the master bedroom from the petitioner's home on January 29, 1985; and

"(c) Two $25 savings bonds and two $50 savings bonds all in the name of 'Mrs. Rosetta Keaton,' seized from a kitchen cabinet in the petitioner's home on January 29, 1985.

"(2) The following property was found to be derivative contraband and was forfeitable to the Commonwealth of Pennsylvania, consequently:

"(a) $50 cash seized from the kitchen counter in the petitioner's home on January 29, 1985; and

"(b) $1,626 cash and $2 cash seized from the kitchen cabinet in the petitioner's home on January 29, 1985." See *Sugalski v. Cochran,* Misc. nos. 337 July 1985, 339 July 1985 (December 23, 1986).

Shortly thereafter, on August 4, 1986 and October 15, 1986, the commissioner of the Pennsylvania State Police, which at the time was Jay Cochran (who was succeeded by the present commissioner, Ronald M. Sharpe), received two notices of levy, by mail, from the IRS, demanding that the tax liability of Charles E. Roop Sr., be paid to the IRS from the money that the Pennsylvania State Police had seized from him on January 29 and 30, 1985.

An appeal to the Superior Court of Pennsylvania was filed by the commonwealth on August 22, 1986. The Pennsylvania Superior Court, however,

affirmed the decision of the court of common pleas on August 10, 1987. The commonwealth then returned the seized money in the following manner. Of the $509,875 seized from Charles E. Roop Sr., $418,508 was distributed to the IRS and $91,375 was distributed to the plaintiff's law firm. The remainder of the money was returned to Charles E. Roop Jr. and Laura Sugalski. See *Sugalski v. Cochran,* 365 Pa. Super. 370, 579 A.2d 1104 (1987).

## DISCUSSION

Plaintiffs, here, allege that the commonwealth breached a fiduciary duty to invest the seized money from January 29, 1985 until December 4, 1987, and that the commonwealth's failure to comply with the IRS's notices of levy for outstanding tax debts of Charles E. Roop Sr., caused his estate to have to pay $60,000 in additional tax penalties.

We note, initially, with interest that plaintiffs in this case are requesting interest on the money seized, though in each instance the monies seized were in the form of cash in boxes found in the plaintiffs' homes or in a safe deposit box in a bank. None of the monies upon which interest is now being demanded were earning any type of interest or income at the time in custodia legis.

As 1 Pa.C.S. §2310 states, the commonwealth, its officials and employees acting within the scope of their employment, enjoy sovereign immunity from suit, except in those instances where sovereign immunity is *specifically waived.* The commonwealth and the commissioner of the Pennsylvania State Police fall within the scope of 1 Pa.C.S. §2310.

The commonwealth waives sovereign immunity in negligence actions only in the following situations:

"§8522. Exceptions to sovereign immunity —

"(a) *Liability imposed* — The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in the subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

"(b) *Acts which may impose liability* — The following acts by a commonwealth party may result in the imposition of liability on the commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

"(1) *Vehicle liability* — The operation of any motor vehicle in the possession or control of a commonwealth party. As used in this paragraph, 'motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

"(2) *Medical-professional liability* — Acts of health care employees of commonwealth agency medical facilities or institutions or by a commonwealth party who is a doctor, dentist, nurse or related health care personnel.

"(3) *Care, custody and control of personal property* — The care, custody or control of personal property in the possession or control of commonwealth parties, including commonwealth-owned personal property and property of persons held by a commonwealth agency, except that the sovereign immunity to the commonwealth is retained as a bar

to actions on claims arising out of commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.

"(4) *Commonwealth real estate, highways and sidewalks* — A dangerous condition of commonwealth agency real estate and sidewalks, including commonwealth-owned real property, leaseholds in the possession of a commonwealth agency and commonwealth-owned real property leased by a commonwealth agency to private persons, and highways under the jurisdiction of a commonwealth agency, except conditions described in paragraph (5).

"(5) *Potholes and other dangerous conditions* — A dangerous condition of highways under the jurisdiction of a commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the commonwealth agency had actual written notice of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition. Property damages shall not be recoverable under this paragraph.

"(6) *Care, custody or control of animals* — The care, custody or control of animals in the possession or control of a commonwealth party, including but not limited to police dogs and horses and animals incarcerated in commonwealth agency laboratories. Damages shall not be recoverable under this paragraph on account of any injury caused by wild animals, including but not limited to bears and deer, except as otherwise provided by statute.

"(7) *Liquor store sales* — The sale of liquor at Pennsylvania liquor stores by employees of the Pennsylvania Liquor Control Board created by and

operating under the Act of April 12, 1951 (P.L. 90), known as the 'Liquor Code,' if such sale is made to any minor, or to any person visibly intoxicated, or to any insane person, or to any person known as an habitual drunkard, or of known intemperate habit.

"(8) *National Guard activities* — Acts of a member of the Pennsylvania military forces." 42 Pa.C.S. §8522.

Furthermore, those eight specific exceptions have been strictly construed by the commonwealth courts. *Davidow v. Anderson,* 83 Pa. Commw. 86, 476 A.2d 998 (1984). The court in *Davidow v. Anderson* was applying 42 Pa.C.S. §8522(a), which provides, in part:

"(a) *Liability imposed* — The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) *only and only to the extent set forth in this subchapter ...* " (emphasis supplied)

The court interpreted that section "as being evidence of an intent on the part of the General Assembly to exempt the sovereign from immunity only in specific, clearly-stated situations and that it is our duty, therefore, strictly to construe the above sections." *Davidow* at 91, 476 A.2d at 1000. As the *Davidow* court noted, "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Statutory Construction Act of 1972, 1 Pa.C.S. §1921(b).

We find that the commonwealth's alleged breach of a fiduciary duty to invest seized money and provide for plaintiffs the interest accrued on that money, and the failure to respond to and honor the IRS notice of levy do not fall within any of the eight waived categories to sovereign immunity. Further-

more, strictly construing 42 Pa.C.S. §8522, it is obvious that the General Assembly clearly had no intention of allowing the commonwealth to be exposed to this type of liability.

Also, as to the failure of the commonwealth to respond to IRS's notice of levy, it is well-settled that money which is held by the commonwealth as a result of a seizure pursuant to a search warrant, or in connection with an arrest, is property which is subject to the order of the court, and is clearly in custodia legis. Such money is consequently not subject to attachment or garnishment. 35 Pa.C.S. §780-128; Pa.R.Crim.P. 324(a), 324(b), 42 Pa.C.S., *Commonwealth v. Myers,* 298 Pa. Super. 272, 444 A.2d 1170 (1982).

The court in *Commonwealth v. Myers* noted:

"The reason for the immunity of property in custodia legis is that to permit attachment or execution thereon by others would require a public officer to appear and defend a multitude of actions regarding the right to possession and would cause confusion and delay in the execution of legal process." *Myers* at 282, 444 A.2d at 1176.

Further, the court asserted:

"The fact that the particular lienor which sought execution was the Department of Revenue does not alter the fact that dispute between owner and creditor or between competing creditors has no place in the courts of criminal prosecution. The district attorney was not free to dispose of the money, nor was the fund being held solely for disposition of the money, nor was the fund being held solely for the disposition to the tax creditor, but was held for the specific purpose of presentation as evidence and for later determination of disposition by the court. Therefore, no matter how valid the claim of the Department of Revenue, asserted pur-

suant to its validly entered tax lien, it was without power to attach the property during the period it was in custodia legis." *Id.*

We find that the money seized in the instant case was held in custodia legis, and therefore not subject to attachment or garnishment. Only after it determined not to be derivative contraband by our court and the Superior Court was the money released to counsel and the IRS by agreement of the parties.[*]

For the above reasons, this court sustains the preliminary objections on behalf of defendants, Commonwealth of Pennsylvania and Ronald Sharpe, commissioner, Pennsylvania State Police. We find that the money seized was held in custodia legis, and moreover, that plaintiffs' claims are barred by the doctrine of sovereign immunity pursuant to 1 Pa.C.S. §2310 and 42 Pa.C.S. §8522.

## ORDER

And now, March 23, 1989, upon consideration of briefs of counsel and oral argument heard November 18, 1988, it is hereby ordered that defendants, Commonwealth of Pennsylvania et al.'s preliminary objections in the nature of a demurrer, filed April 13, 1988 to plaintiffs' Laura Sugalski et al.'s complaint, filed March 14, 1988, are sustained.

Plaintiffs' complaint of March 14, 1988, is dismissed.

---

[*] The money was distributed pursuant to a stipulation in *United States of America v. Commonwealth of Pennsylvania et al.* C.A. 87-5889 (E.D. Pa. 1987). Laura Sugalski and Sharon Roop, plaintiffs in the instant action, were two of the "estate defendants" in *United States of America v. Commonwealth of Pennsylvania et al.*, C.A. 87-5889.