667 A.2d 739

**COMMONWEALTH of Pennsylvania**

v.

**Ossie Harrington YOUNGE, Appellant.**

Superior Court of Pennsylvania.

Argued March 22, 1995.

Filed Nov. 6, 1995.

542

Jack W. Cline, Mercer, for appellant.

James P. Epstein, District Attorney, Hermitage, for Commonwealth, appellee. (submitted)

Before ROWLEY, President Judge, and KELLY and HOFFMAN, JJ.

ROWLEY, President Judge:

We are asked in this appeal to determine whether it is improper for a trial court to inquire into the source and intended use of confiscated currency when a claimant petitions for its return under Pa.R.Crim.P. 324.[1] Appellant Ossie Harrington Younge claims that in undertaking such inquiries the trial court placed an "improper and undue burden" upon him. Consequently, the trial court abused its discretion in denying his petition for return of $22,080.00, seized by police when appellant was stopped for speeding.

After careful review of the record and applicable case law, we cannot agree that the trial court placed an undue and improper burden on appellant by conducting inquiries into the source and intended purpose of the confiscated funds, in order to make a determination with respect to ownership. However, the Commonwealth's failure to produce any evidence to rebut the evidence which appellant provided, in response to the trial court's inquiries, renders the trial court's subsequent determination that appellant was not entitled to a return of his property an abuse of discretion. Accordingly, we reverse.

An individual "aggrieved by a search and seizure" resorts to Rule 324 to petition the court for a return of seized property.[2]

1. The Commonwealth contends that the "precise issue presented [ ] is whether defendant's motion for return of property was properly denied for lack of credible evidence establishing defendant's right to possess the property." Appellee's Brief at 3. The trial court agrees, stating that "[i]t is to the issue of whether defendant has met his burden of proof that this Opinion is written."

2. Rule 324. Motion for Return of Property.

(a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.

(b) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

(c) A motion to suppress evidence under Rule 323 may be joined with a motion under this Rule.

Pa.R.Crim.P. 324.

A trial court hearing the motion is to return the property if satisfied that: 1) the petitioner is entitled to lawful possession, and 2) the property is not contraband. *Commonwealth v. Pomerantz*, 393 Pa.Super. 186, 573 A.2d 1149 (1989). A petition for return of property is voluntary, and a trial court hearing such motion "shall receive evidence on any issue of fact necessary to the decision thereon." Rule 324(b). In making an initial determination regarding ownership, it is the province of the trial court to judge the credibility of the witnesses and weigh the testimony offered. *Commonwealth v. One 1985 Cadillac Seville*, 371 Pa.Super. 390, 538 A.2d 71 (1988). It is not the duty of an appellate court to act as fact-finder, but to determine whether there is sufficient evidence in the record to support the facts as found by the trial court. *Id.* at 398, 538 A.2d at 75.

We begin by noting that Rule 324 has spawned a wealth of litigation, most of which is addressed to the question of whether the Commonwealth met its burden of proving by a preponderance of the evidence that seized property is forfeitable as contraband under section (b). Our research has disclosed no case in which the question of whether a petitioner met the initial burden of establishing a right to lawful possession or ownership of seized currency under Rule 324 was the *only* issue to be decided.[3] In the few cases in which lawful possession or ownership of seized cash was at issue, invariably along with the contraband status of the money, the petitioner's right to lawful possession or ownership was either presumed, or at best, cursorily discussed.

However, this Court has determined that a failure to even minimally allege entitlement to lawful possession is fatal to a petition for return of property under Rule 324. *Pomerantz, supra.* In that case the only claim to possession, an averment in the petition that cash seized from his residence constituted

---

**3.** A panel of this Court addressed the right to lawful possession of a vehicle, forfeited pursuant to statutory authority, in *One 1985 Cadillac Seville, supra.* There, the Court determined that the appellant failed to carry her burden of proving by a preponderance of the evidence that she owned the vehicle, and thus lacked standing to raise the "innocent owner" defense provided in 42 Pa.C.S. § 6801 *et seq.*

"the exclusive property of the [petitioner] obtained by legitimate business means," was not offered into evidence, and the petitioner did not testify at the hearing. *Pomerantz*, 393 Pa.Super. at 188–89, 573 A.2d at 1150; *see also Commonwealth v. Doranzo*, 365 Pa.Super. 129, 529 A.2d 6 (1987) (trial court's factual finding of lawful possession and grant of a petition to return seized property found improper where no testimony was offered by claimant to establish lawful possession, and the Commonwealth circumstantially proved property constituted derivative contraband), *appeal denied*, 517 Pa. 614, 538 A.2d 497 (1987).

On the other hand, in *Commonwealth v. Myers*, 298 Pa.Super. 272, 444 A.2d 1170 (1982), this Court rejected a determination that cash seized from a petitioner's purse constituted derivative contraband, made solely on the basis that the trial court found that "[d]efendant's version of the source of the money appear[ed] to be unreasonable." *Id.* at 280, 444 A.2d at 1175. The panel noted that the "taxpayer was not actually examined as to the 'source' of the money, [and] simply made the statement that she had no bank or safe place to keep the money." *Id.* at 280 n. 4, 444 A.2d at 1175 n. 4.[4]

In light of the above decisions we cannot agree with appellant's contention that once a petitioner makes a minimal assertion to lawful possession it is improper for the trial court to make additional inquiries, of *either* a petitioner or the respondent, so long as the inquiries are relevant to the issue of the right to lawful possession or ownership. In the absence of sufficient evidence, as this Court pointed out in *Myers*, there is substantial risk that a trial court is free to create "its own inference" with respect to a claimant's right to lawful possession or ownership. *Id.* at 281, 444 A.2d at 1175. This would be as improper as was the trial court's determination in *Myers* that the Commonwealth may establish seized currency to be

4. At issue was whether Ms. Myers had been divested of a "possessory right" in the money *nunc pro tunc* to the date of seizure by the trial court's subsequent determination that the cash was derivative contraband, such that a claim of attachment by the Department of Revenue to satisfy a tax lien could be defeated.

forfeitable simply because it was in the possession of one who was also in possession of marijuana, "plac[ing] no burden of proof whatsoever on the Commonwealth." [5] *Id.*

■ We conclude that inquiries regarding the source and intended purpose of seized property do not place an undue and improper burden upon a petitioner asserting a right to reclaim property seized from his or her possession. To the contrary, in the event that a trial court determines that such inquiries are necessary, they serve the essential purpose of decreasing the risk that any decision subsequently made by a trial court will be rendered arbitrary and capricious by a lack of competent evidence.[6]

■ We turn next to the question of whether the evidence appellant provided in response to the trial court's inquiries was insufficient, as a matter of law, to support the trial court's denial of appellant's petition for a return of his property.

The record discloses the following undisputed facts. Appellant is a native of Guyana, South America. He was stopped at 3:00 A.M. on September 21, 1993, by the Pennsylvania State Police for driving in excess of the posted speed limit in Mercer County. A registration and license check revealed that appellant held a current license, issued in North Carolina, and suspended in New York for failure to appear and pay a fine. He was driving a vehicle leased to Paul Steven Grier in

5. At the time *Myers* was decided, there was no statutory authority for forfeiting the currency seized, causing the panel to observe:
> The only provision of Pennsylvania law under which the court in this instance *could refuse to restore the property* to Ms. Myers is Pa. R.Crim.P. 324(b)[.]

*Myers*, 298 Pa.Super. at 279 n. 2, 444 A.2d at 1174 n. 2 (emphasis supplied). In 1984 the legislature extended the scope of forfeiture under the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa.C.S. § 780–128, to include "money.... used or intended to be used to facilitate any violation of [the Act]." The statute was repealed in 1988 and reenacted at 42 Pa.C.S. § 6801 *et seq.*

6. We do not mean to suggest that a trial court is *required* to make inquiries with respect to the source and intended purpose of property seized from a claimant. Whether such inquiries would even be necessary is a matter best left to the trial court's discretion.

Louisville, Kentucky, although the lease agreement appellant produced stated "no additional driver[s]" were permitted.

A consent search of the rented vehicle turned up a garment bag containing, along with clothing and personal items, $22,-080.00 in cash.[7] Appellant was arrested and cited for two summary offenses, speeding and driving with a suspended license,[8] and one misdemeanor offense, unauthorized use of an automobile.[9] The Commonwealth confiscated the garment bag and the $22,080.00 in cash. The affidavit of probable cause subsequently executed by the arresting officer contained the following contradictory information:

[ ]The registration revealed a rental lease agreement signed to *Paul* Stephen Grier[,] 1843 Mary Catherine Drive[,] Louisville[,] 40216[.] The contract stipulates "No additional driver[.]" The defendant advised this affiant that he obtained permission to drive the vehicle from a subject named *"Paul* [.]" No such *"Paul"* is listed on the agreement. [ ]

Affidavit of Probable Cause, 9/21/93 (emphasis supplied).

Appellant's claim to having received permission to operate the rented vehicle from the lessee, Paul Stephen Grier, was confirmed the next day by the Louisville Police Department. The teletype sent from the Louisville police, and read into the record at appellant's hearing on May 24, 1994, included the following:

[Paul] Grier knows Younge, Ossie; [Grier] Let [Younge] have vehicle last night and said subject was to call him this morning to let him know where he could pick up the vehicle. Your TTY does not say what information you need and what action you need our department to take. Please be more specific in your reply. We will be glad to assist your agency in this matter when we understand what you need.

7. Appellant refers in his brief to "$22,085 US currency." However, at the hearing appellant testified that the amount of cash in the garment bag was $22,080.00.

8. 75 Pa.C.S. § 3362(a)(2), § 1543(a). The charge of driving with a suspended license was nolle prossed at the Commonwealth's request on August 24, 1994.

9. 18 Pa.C.S. § 3928.

There is no evidence in the record that the Commonwealth took any further action, or responded in any way to the offer of assistance received from the Louisville Police.

■ Pursuant to Rule 324(a), appellant petitioned for return of the cash on April 15, 1994. The trial court heard extensive testimony on the issue of appellant's right to reclaim the funds on May 24, 1994, and again on June 6, 1994. Appellant's motion was denied on June 6, 1994, after the trial court determined that appellant presented "no credible evidence" that the $22,080.00 in currency belonged to him. The Commonwealth returned the garment bag and its contents to appellant the same day, but kept the cash. No petition to forfeit the money has been filed by the Commonwealth, and the trial court made no determination, pursuant to Rule 324(b), that the cash was forfeitable as contraband. Based on the evidence received at the two hearings, the trial court made findings of fact and concluded that appellant's petition was properly denied because the "defendant's final explanation as to the sources and purposes of the money was incredible." [10]

A review of the testimony provided by appellant and his fiancee, Elizabeth Cawley, with respect to the source and intended purpose of the money, leads us to conclude that it constitutes far more than the "minimum" allegation of entitlement to lawful possession found wanting in *Doranzo* and *Pomerantz*. With respect to the source of the $22,080.00,

**10.** The trial court consistently refers to appellant as the "defendant" throughout the proceedings, and in its opinion. However, a hearing under Rule 324 is only quasi-criminal in nature, *Petition of Maglisco*, 341 Pa.Super. 525, 491 A.2d 1381 (1985), and the burden required of the Commonwealth under section (b) to establish forfeitability of property as contraband rises only to a civil, "preponderance of the evidence," standard, *Commonwealth v. Fassnacht*, 246 Pa.Super. 42, 369 A.2d 800 (1977), *cert. denied*, 439 U.S. 911, 99 S.Ct. 280, 58 L.Ed.2d 257 (1978).

Because of the "ambiguity" inherent in Rule 324, *Commonwealth v. Cox*, 161 Pa.Commonwealth Ct. 589, 594 n. 8, 637 A.2d 757, 760 n. 8 (1994), hearings held pursuant to it should be conducted consistent with the plain language of the rule. Trial courts should recognize that a "person" is petitioning for the return of seized property, and the *only* burden of persuasion required of a petitioner under section (a) is entitlement to lawful possession or ownership of the subject property. *Commonwealth v. Stipetich*, 424 Pa.Super. 539, 623 A.2d 360 (1993).

appellant testified that the money belonged to "my family and me." Appellant stated that he contributed $1,000.00 towards the total, his aunt contributed a portion, and his fiancee contributed a portion. At appellant's second hearing, his fiancee testified that she contributed $6,000.00, and appellant's aunt, Myrtle Pauline Williams, contributed $15,000.00. A native of Jamaica, West Indies, Ms. Cawley explained to the trial court, in great detail, that the cash constituted a form of emergency money fund customarily collected in the Caribbean because "everybody don't believe in banks." Members of a group contribute money, called a "hand," into a "SU–SU," and the total placed into the fund then circulates among the participants. Each member is entitled to withdraw the money they contributed, or "box hand," whenever needed:

MR. EPSTEIN [for the Commonwealth]: Is it your testimony then that you withdrew $6,000 from one of your [business] accounts?

MS. CAWLEY: No, I received that from a SU–SU which is a partner and that's a type of savings where we in the card being, ah, each person, as for example, it may be a group of [ten] people. Each person will put $10.00/$50.00 in and it will all depend on the hand they want. It can either be one hand or two hands. If they have one hand, they will contribute $50.00 per week. If they have two hands it would be $100.00 per week. And it all depends on the amount of people, it all depends on the amount of people[,] you get a sum whatever week it may be for you.

MR. EPSTEIN: What is done with it, say you have [ten] or how many people contributing to this thing, what's done with that money?

MS. CAWLEY: Well, it's theirs. [ ]

With respect to the intended purpose of the cash, appellant testified that "we were trying to invest in some property" in Louisville, Kentucky. Appellant's fiancee produced a pay stub verifying that she earned $39,499.92 the previous year, and corroborated appellant's statement that "we was [sic] going into business, as far as opening a restaurant was concerned." Both appellant and his fiancee offered an explanation why

appellant came to be carrying the cash confiscated from him: the money was left with appellant because Ms. Cawley and appellant's aunt had to leave Kentucky before appellant in order to return to their jobs in New York.[11]

The Commonwealth, on the other hand, offered no evidence relevant to the issue of who might have a superior claim to the seized cash, if not appellant. No attempt was made to disprove the testimony offered by appellant and his fiancee that the cash was collected according to a cultural practice which they testified was prevalent in their native countries. In fact, the only evidence offered by the Commonwealth to rebut appellant's claim to lawful possession was the testimony of the officer who stopped appellant for speeding. The trial court's inference that the explanations offered by appellant and his fiancee were "incredible" rely heavily upon discrepancies between the answers appellant provided at the time he was stopped, as alleged by the arresting officer, and those appellant provided under oath at the hearings. Though we do not dispute the factual findings made by the trial court with respect to whether such discrepancies in appellant's answers to the arresting officer exist, they do not rise to the level of competent evidence sufficient to rebut the testimony appellant offered to support his claim to lawful possession, nor do they support the inference drawn by the trial court that appellant failed to meet his burden of persuasion that the property was lawfully his. We think the discrepancies alluded to by the trial court are as likely the result of the obvious difficulty appellant and his fiancee demonstrated in struggling to communicate in English, as the result of an intent to prevaricate.[12]

11. Appellant also claims the trial court erred in excluding as hearsay a notarized letter purportedly written by his aunt claiming that $15,-000.00 of the money seized was hers and authorizing the court to release the funds to appellant. We need not decide this issue as our resolution of appellant's claim for return of his property rests on testimony offered into evidence at the hearings.

12. The trial court's inference that appellant was not entitled to reclaim the cash relies, in part, on a finding that when questioned by the arresting officer, appellant "gave his mother's name and said the purpose of the money was to buy his mother a house." At the hearing, however, appellant stated:

A review of the record establishes that the findings of fact relied upon by the trial court in making its determination that appellant was not entitled to a return of his property are not relevant to the only issue before the court: whether it was more likely than not that appellant had a right to lawful possession of the seized cash. Rather, the findings of fact upon which the trial court relied in concluding that appellant failed to meet his burden of establishing the right to reclaim the cash demonstrate a selective bias, misstate the testimony of record, and improperly rely upon the vehicular infractions for which appellant was arrested.

For example, the trial court found as a fact that there was nothing in the garment bag to identify it and the contents as "being the Defendant's," while disregarding the fact that the Commonwealth, with *no* discussion, returned to appellant's possession everything confiscated from him, except the cash. The trial court found as a fact that "defendant did not establish any ability to acquire monies of that sum . . . earn[ing] only approximately fifteen hundred dollars the previous year," while rejecting the fact that appellant never testified that the entire $22,080.00 had been contributed by him. The trial court essentially determined that because appellant's fiancee, a "computer graphic artist with a gross income of $39,000 dollars [and] a checking and savings account," failed to consider traveling with a cashier's check, her entire testimony was incredible. Finally, the trial court clearly misstates appellant's testimony of record, by finding as a matter of fact that "the three owners of the money each put it in a box and then went to Louisville."

■ When the trial court relied upon the vehicular offenses for which appellant was arrested to support its denial of

Q: Did you tell [the officer] you were going to buy your mother a house in Queens, New York?
A: No, sir. The officer asked my mom's name and I told him it was Winifred.

The trial court also found as a fact that, when questioned by the police, "[d]efendant denied he had any money in the car except seven hundred ($700) dollars which he had on his person." However, appellant testified at the hearing that the police "asked me if I have any drugs or any gun in the car. I said, 'No.'"

appellant's petition for a return of the confiscated cash, it misapplied the law. When making a determination with respect to a petition for return of seized property under section (a) of Rule 324, it is as improper to rely upon the criminal infractions which gave rise to the seizure, if not relevant to the issue of the right to lawful possession, as it is to refer to the "person" petitioning the court for return of his or her property as a "defendant." *See* note 4, *infra.*

Evidence of criminal activity, if not offered to rebut a claim to lawful ownership, is *only* relevant when the Commonwealth is attempting to prove the property seized is subject to forfeiture as contraband under section (b), which in this case, the Commonwealth concedes it cannot do. Neither the trial court nor the Commonwealth have ever taken the position that the cash seized from appellant's garment bag is contraband of any kind, nor would such a claim succeed. In the absence of statutory authority subjecting appellant to criminal penalty if the cash were returned to him, the Commonwealth may not forfeit the money by claiming that it is per se contraband. *One Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). In the absence of any evidence that the cash is the fruit of, or was used to further, criminal activity, the Commonwealth cannot prevail in a petition to forfeit the cash as derivative contraband. *Commonwealth v. Anthony,* 418 Pa.Super. 82, 613 A.2d 581 (1992).

Thus, we are left with the conclusion that, although against no law of which we are aware, the actions of appellant and members of his family in carrying their savings in cash, in lieu of a "cashier's check," while failing to make "advance contact with realtors" in their search for investment property, simply did not comport with the trial court's notion of proper behavior. Put another way, after hearing extensive testimony with respect to the source and intended purpose of the cash seized from appellant, and in the absence of any evidence from the Commonwealth relevant to rebut appellant's claim, the trial court simply chose not to believe him. This subjective form of disbelief cannot be used as the basis for a decision to dispossess a person of his property. To affirm the trial

court's reasoning in this case would permit each trial court to impose its own opinion with respect to the amount, the form, and the manner in which an individual may transport his or her property.

Our case law does not require a petitioner to meet a stiffer burden of persuasion under section (a) of Rule 324, when attempting to reclaim property seized from his or her possession, than the Commonwealth is required to meet in attempting to defeat a petitioner's claim under section (b). Therefore, we hold that when a petitioner offers evidence of entitlement to lawful possession or ownership, as is required to meet his or her burden of persuasion by a preponderance of the evidence, the burden of production shifts to the Commonwealth to produce evidence to rebut the petitioner's claim. The Commonwealth is thus required to come forward with any material facts available to it, *relevant to the right to lawful possession,* or risk defeat on the issue. *See Commonwealth v. Giffin,* 407 Pa.Super. 15, 22, 595 A.2d 101, 104 (1991) (forfeiture statute's rebuttable presumption that cash found near drugs constitutes proceeds from drug sale forces defendant to come forward, or "suffer inevitable defeat on the issue"); *see generally* Graham C. Lilly, An Introduction to the Law of Evidence § 15 (1978). If the Commonwealth has insufficient evidence at hand to rebut the petitioner's claim of entitlement to lawful possession or ownership under section (a) of Rule 324, it may always attempt to defeat a petitioner's claim by proving that the seized property is more likely than not subject to forfeiture as contraband under section (b). However, the Commonwealth may not, as it attempted to do here, rely upon evidence, insufficient if advanced under section (b), in order to succeed in defeating a petitioner's claim to lawful possession under section (a).

Although the burden of persuasion never shifts from the petitioner to establish entitlement to lawful possession or ownership of seized property, requiring the Commonwealth to meet its own burden of production with respect to lawful possession is especially necessary in the event that the subject property is currency. As Commonwealth Court recently ob-

served, the maxim "possession is nine-tenths of the law" is not a legally accurate rule, but possession *is* "an element to consider in determining ownership." *Commonwealth v. One 1988 Suzuki Samurai,* 139 Pa.Commonwealth Ct. 68, 73, 589 A.2d 770, 773 (1991). The fungible nature of currency necessarily raises an inference that the possessor is the lawful owner, absent proof of theft; we can conceive of no means by which anyone may better establish a right to lawful possession of cash in their possession but *by* possession. The fact that the cash was contained in a garment bag which the Commonwealth returned to appellant's possession, without dispute, raises, at the least, a strong inference that the cash was as much his property as were the other contents of the garment bag.

Notwithstanding the absence of statutory authority for the seizure that occurred in this case, the Commonwealth's concession that the currency does not constitute contraband, and an acknowledgment that it does not intend to "seek forfeiture," the Commonwealth disingenuously maintains that its primary concern is "to ensure the return of possession or control of the money to its rightful owner." Appellee's Brief at 3. The obvious flaw in this reasoning is that if someone other than appellant is entitled to lawful possession, how is appellant's possession of the cash to be explained? Two possibilities occur to us: either appellant is a bailee, or he is, as inferred by the Commonwealth and the trial court, an "*un lawful*" possessor, having come to possess the cash by some undetermined illegal means. However, if appellant were a bailee, he would have to answer to his bailor, not the Commonwealth, for care of the currency. If appellant is in fact an unlawful possessor, then the cash constitutes derivative contraband, and would be subject to forfeiture as such. Rule 324(b). It would appear that the Commonwealth, by avoiding a forfeiture proceeding in which it concedes it could not prevail, hopes to accomplish indirectly what it could not accomplish directly: it seeks to avoid returning the cash without producing *any* evidence that the money does not belong to appellant, and without producing *any* evidence that the cash is

derivative contraband and subject to forfeiture.[13] *Pomerantz, supra; see also Commonwealth v. Cox,* 161 Pa.Commonwealth Ct. 589, 637 A.2d 757 (1994) (in order for a trial court's order of forfeiture under Rule 324(b) to be proper, Commonwealth was required to attempt to obtain forfeiture of car held for evidence, then released).

■ It is well-settled that statutes authorizing forfeiture are not favored under the law of this Commonwealth and are strictly construed. *Cox, supra, citing to Commonwealth v. 502–504 Gordon Street,* 147 Pa.Commonwealth Ct. 330, 607 A.2d 839 (1992), *aff'd per curiam,* 535 Pa. 515, 636 A.2d 626 (1994). For this reason, such statutes invariably provide extensive procedural safeguards.[14] Rule 324, in contrast, pro-

13. We are aware that the currency seized from appellant is in *custodia legis* and subject to the order of the trial court. *Myers, supra* at 282, 444 A.2d at 1175. However, Rule 324 makes only two provisions for disposition of seized property: "the property shall be restored," or "the court may order the property be forfeited" if it determines the property is contraband. We conclude from this that when promulgating Rule 324, our Supreme Court did not intend for property seized to be consigned indefinitely to an evidence locker, the likely result of the trial court's actions in this case.

14. *See, e.g.,* 72 P.S. § 8285(f) (Commonwealth must file petition to forfeit property seized for violation of the cigarette tax law within five days of confiscation or return it), § 8285(g) (defines what information forfeiture petition must include), and § 8285(e) (provides for disposition of forfeited property); 47 P.S. § 6–602(a)-(e) (setting forth procedures to be followed by Commonwealth when filing forfeiture petition under liquor code), and § 6–603 (provides for disposition of property seized and condemned); 18 Pa.C.S. § 5513(b) (adopting provisions for seizure, summary and judicial forfeiture from the liquor code for gambling devices); 18 Pa.C.S. § 5511(j) (provides that animals seized for violation of statute prohibiting cruelty to animals not deemed forfeitable until conviction first obtained, and provides for ultimate disposition of forfeited property); 30 Pa.C.S. § 927(a) (forfeiture of fish or devices used in violation of the fish law may not occur prior to conviction); 42 Pa.C.S. § 6801–6802 (setting forth process for forfeiture under controlled substances forfeitures act, including "innocent owner" defense, provisions for custody and disposal of seized property, rebuttable presumption of contraband status for cash seized in close proximity to controlled substances, and providing for institution of process "forthwith" if seizure occurs without process, annual report from each county with respect to property seized and proceeds obtained, as well as judicial review of annual state-wide report prepared by state's Attorney General).

vides only that a trial court "shall receive evidence on any issue of fact necessary" to make a determination with respect to a claimant's right to lawful possession. We conclude that when the state effects a seizure of property, absent statutory authority or any evidence of criminal wrongdoing related to the property, a petitioner advancing a claim to lawful possession or ownership under Rule 324 is entitled, at a minimum, to have his or her evidence answered. In the absence of any evidence produced to rebut appellant's claim that the currency seized from him was lawfully possessed by him at the time it was taken, permitting the Commonwealth to prevent its return to appellant's possession amounts to little more than state-sanctioned theft.

The Commonwealth may not have it both ways. Where, as here, there is an absence of any criminal nexus between the property seized and the petitioner attempting to reclaim possession, the Commonwealth has a burden to produce evidence relevant to rebut the claim to lawful possession or ownership under section (a), file for forfeiture under section (b), or return the property forthwith to the claimant.

The facts in this case simply do not support the inferences drawn by the trial court. Accordingly, the determination that appellant was not entitled to a return of his property constitutes an abuse of discretion.

The order denying appellant's motion for return of his property is reversed. We remand to the trial court so that it may enter an order granting appellant's petition for return of the currency confiscated from him.

Order reversed.